**IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

|  |  |  |
|---|---|---|
| **MARION GREER**, individually, and on behalf of all others similarly situated, | : | |
| | : | No.: |
| Plaintiff, | : | Hon. |
| v. | : | |
| **COMERICA MANAGEMENT CO. INC.,** | : | |
| Defendant. | : | |

**<u>COLLECTIVE AND CLASS ACTION
COMPLAINT AND JURY DEMAND</u>**

Plaintiff, Marion Greer, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Comerica Management Co., Inc. ("Defendant"), and states as follows:

**<u>INTRODUCTION</u>**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated employees of Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2. Plaintiff and the putative collective members consist of current and former non-exempt call center contact agents ("Agents"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all pre- and mid-shift off-the-clock work.

3. Regardless of the specific job title, all Agents: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing assistance to Defendant's customers.

4. Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging software programs, and logging into phones. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "ready" when their scheduled shifts began.

5. Defendant further required its Agents to cut their unpaid, designated meal periods short to ensure all systems and programs were loaded and that they were ready to work the moment their unpaid meal periods concluded.

6. An Agent's failure to be ready and able to take calls when the scheduled

shift began, or restarted following a meal period, would result in disciplinary action.

7.      The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those who were scheduled and paid for only forty (40) hours per week, worked over forty (40) hours per week without the required overtime premium for all time worked over forty (40) hours.

8.      Defendant, through its managers, had actual and/or constructive knowledge that its Agents were completing this off-the-clock work without compensation because many of the Agents were observed doing so while working in-person. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

9.      The U.S. Department of Labor recognizes that call center jobs, which are similar to the positions held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, (July 2008), available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers*.

10. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/Agents working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

11. Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

12. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former call center contact agents, or similar positions, who work or have worked for Defendant at any time during the past three years.***

13. Defendant is liable for its failure to pay its Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14. Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and mid-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees

4

and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.     Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

18.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Agents, engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

19.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the Eastern District of Michigan and maintains an office location in the Eastern District of Michigan.

20.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District,

and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

21.    Plaintiff Marion Greer is a resident of Farmington Hills, Michigan. Plaintiff worked for Defendant as a call center contact agent from approximately July 2, 2024 to October 31, 2025. Plaintiff Greer worked on a hybrid schedule, splitting her workweek between Defendant's Farmington Hills office and working remotely from her home.

22.    Defendant compensated Plaintiff for her services as an Agent in the form of an hourly wage, most recently at the rate of $22.40. Plaintiff Greer signed a consent form to join this collective action lawsuit. ***Exhibit A***.

23.    Additional putative Collective members were or are employed by Defendant as Agents working full-time in person, in hybrid roles, and fully remotely during the past three years. These putative Collective members may also work in Michigan, in Defendant's other office locations in Texas or California, or fully remotely from their homes in these or other states. Their consent to join forms will also be filed in this case.

24.    Defendant is a leading finance, business banking, and wealth management company.

25.    Defendant is a Michigan corporation, registered with Michigan's

Department of Licensing and Regulatory Affairs (Identification No. 800443838), and maintains its headquarters in the State of Texas.

26.   Defendant's registered agent for service of process is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

## **GENERAL ALLEGATIONS**

27.   Defendant employed hundreds of Agents – including Plaintiff – within the past three years to assist its customers with customer service needs.

28.   Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

29.   The Agents' primary job function was to answer calls that came into Defendant's general customer service line. These customer requests included, but were not limited to: checking account balances, reviewing transactions, reporting disputed or fraudulent transactions, and finding branch locations.

30.   Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including, but not limited to: offer letters, paystubs, and/or other payroll records.

31.   Plaintiff Greer typically worked 8:15 a.m. to 4:45 p.m., Monday, Tuesday, and Thursday through Saturday, with a half-hour unpaid lunch period. As such, Plaintiff's standard schedule was to work forty (40) hours per week.

7

32. Consequently, when Plaintiff Greer worked her standard schedule, she routinely worked more than forty (40) hours per week due to her off-the-clock work and thus incurred overtime.

33. Similarly, Defendant's Agent positions typically had schedules that required them to work at least eight (8) hours per day and on average five (5) days each week, which equated to forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Agents worked less than forty (40) hours in a week and in other weeks they worked more than forty (40) hours. If Defendant's Agents strictly adhered to Defendant's baseline 40-hour schedule, the Agents' schedule resulted in Agents working overtime on a weekly basis.

34. Once hired, Defendant provided all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the shifts; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Agents received was substantially, if not entirely, the same and all Agents were subject to the same disciplinary policies.

35. Specifically, Plaintiff underwent this training at Defendant's office in Farmington Hills with three other Agents.

36. Defendant trained all Agents using standardized procedures and required them to comply with strict attendance and schedule-adherence policies.

37.    Defendant enforced its strict attendance and schedule-adherence policies through its management structure and Agents received weekly "scores." Plaintiff found this experience stressful and intimidating because being out of adherence resulted in threats of termination and, at times, rushed "coaching" session.

38.    Agents were required to be fully logged into Defendant's computer network, customer systems, and phone systems and ready to take calls at the exact start of their scheduled shifts.

39.    To meet this requirement, Agents were required to perform pre-shift boot-up and login activities before clocking into Defendant's timekeeping system.

40.    Agents were further required to be fully logged back into Defendant's computer network, customer systems, and phone systems following their dedicated meal periods.

41.    To meet this requirement, Agents were required to perform mid-shift off-the-clock activities during their dedicated meal periods.

42.    All of Defendant's Agents used the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agent's work, and they could not perform their jobs without them.

## A. Pre-Shift Off-the-Clock Work

43.    The pre-shift boot-up and login process generally consisted of the following steps:

a.  Turning on or waking up their computers;

b.  Logging into Windows with their username and password;

c.  Opening and logging into Defendant's Virtual Private Network ("VPN") with dual-factor authentication;

d.  Opening Microsoft Outlook;

e.  Opening the Amazon virtual phone software;

f.  Opening Defendant's CRM software;

g.  Opening the ADP timekeeping software and clocking in.

44.    The boot-up and login process described above consumed substantial time on a daily basis—typically between five (5) to ten (10) minutes per shift — depending on system speed and the performance of Defendant's computers and programs.

45.    Notwithstanding these requirements, Defendant's timekeeping policies required Agents to clock in and mark themselves "available" in the phone software exactly the start of their scheduled shifts. As a result, because the required pre-shift work routinely took five (5) to ten (10) minutes to complete, Agents were forced to perform most, if not all, of this work off-the-clock, prior to the time they were permitted to clock in.

46.     Agents who failed to complete this work before their scheduled shifts were subject to discipline for tardiness.

47.     The pre-shift off-the-clock time Plaintiff and all other Agents spent booting up and logging in directly benefited Defendant and was integral and indispensable to the Agents' job responsibilities.

**B. Mid-Shift Off-the-Clock Work**

48.     Defendant promised its Agents one unpaid 30-minute meal period each eight (8) hour shift.

49.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

50.     Instead of complying with the law, Defendant did not provide Agents with legitimate bona fide meal periods because it required the Agents to return to their computer stations prior to the end of their unpaid meal periods to log back in

11

and place themselves in an "available" status so they could resume taking live calls the moment their meal periods concluded.

51. Agents spent approximately four (4) to five (5) minutes per shift performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay Agents for work performed during their meal period.

52. The off-the-clock work Plaintiff and other Agents performed during their meal periods was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Agents.

53. Defendant's management was aware that Plaintiff and other Agents performed this off-the-clock work but permitted and even rewarded it through Defendant's schedule adherence metrics.

**C. Defendant Benefited From the Uncompensated Off-the-Clock Work**

54. At all relevant times, Defendant required and directly benefited from the off-the-clock work described above and performed by Plaintiff and all other Agents in connection with the pre- and mid-shift activities described above.

55. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

12

56.     At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents  spent in connection with pre- and mid-shift off-the-clock  work  activities;  however,  Defendant  failed  to  do  so  and  failed  to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

57.     At  all  relevant  times,  Defendant  used  its  attendance  and  adherence policies  against  Plaintiff  and  the  other  CSRs  in  order  to  pressure  them  into performing off-the-clock work.

58.     Defendant  expressly  trained  and  instructed  Plaintiff  and  all  other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

59.     At  all  relevant  times,  Defendant's  policies  and  practices  deprived Plaintiff  and  the  Agents  of  wages  owed  for  off-the-clock  work  activities  they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

60.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Agents worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

61.     Defendant knew or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock work activities is compensable

under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

62.   Despite knowing Agents performed off-the-clock work before their shifts and during their deducted dedicated meal period, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

63.   Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff and the Agents at the FLSA mandated overtime premium of one and one-half their regular hourly rate when they worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

64.   Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former call center contact agents, or similar positions, who work or have worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

65.   Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

66.   Excluded from the proposed FLSA Collective are Defendant's

14

executives, administrative and professional employees, including computer professionals and outside salespersons.

67. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid the full premium overtime compensation they were due when they worked beyond forty (40) hours in a workweek and were not paid any overtime in workweeks where their time punches reflected that they worked slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually worked in excess of forty (40) hours, for which they were due both overtime gap time and overtime.

68. Defendant assigned and/or was aware of all the work that Plaintiff and the members of the FLSA Collective performed.

69. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

70. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under forty (40) associated with unpaid overtime; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

71. Defendant was aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

72. Defendant's unlawful conduct was and continues to be widespread, repeated, and consistent.

73. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they were or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

74. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, work location, and rate of pay. The key issue – the amount of uncompensated pre- and mid-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective

16

members.

75.     There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

76.     Plaintiff estimates the FLSA Collective, including both current and former Agents over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

77.     All of the estimations discussed herein will be refined after collective discovery is completed.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former call center contact agents, or similar positions, who work or have worked for Defendant at any time during the past three years.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

79.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class

members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

80.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a.    Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

   b.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   c.    Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

81.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

82.    Plaintiff will fully and adequately protect the interests of the Rule 23

18

Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens, or hundreds, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

84.     This case will be manageable as a Rule 23 Class action. Plaintiff and Plaintiff's counsel know of no unusual difficulties in this case and Defendant has

19

advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

85. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

86. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

87. Plaintiff re-alleges and incorporates all previous paragraphs herein.

88. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

89. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

90. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

91. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees and classified as such.

92. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

93. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

94. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly performed five (5) to ten (10) minutes or more of pre-shift work activities per shift, and four (4) to five (5) minutes or more of mid-shift work activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

95. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

96.     In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

97.     In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207.

98.     At all times relevant to this action, Defendant failed to maintain true and accurate time records of all hours Plaintiff and the proposed Collective members worked.

99.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Agents spent working off-the-clock, and Defendant could have properly compensated Plaintiff and the proposed Collective members for this work, but did not.

100.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, as well as costs and reasonable attorneys' fees.

## COUNT II
### (On Behalf of the Rule 23 Nationwide Class)
### BREACH OF CONTRACT

101. Plaintiff re-alleges and incorporates all previous paragraphs herein.

102. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

103. For example, Defendant offered to compensate Plaintiff at a minimum of $22.40 per hour if Plaintiff agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling her job duties.

104. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-shift work activities, described herein.

105. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

23

106. In particular, Defendant breached its contracts with Plaintiff and the Rule 23 Class by failing to pay all straight time wages for unpaid work during pay periods without overtime, also known as "gap time."

107. Plaintiff and the Rule 23 Class remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class members more than the federally mandated minimum wage of $7.25 per hour in workweeks in which they worked less than forty (40) hours (i.e., a pure "gap time" claim).

108. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

109. As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

## COUNT III
### (On Behalf of the Rule 23 Nationwide Class)
### UNJUST ENRICHMENT

110. Plaintiff re-alleges and incorporates all previous paragraphs herein.

111. The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

24

112. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

113. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

114. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, including for "gap time", Defendant was unjustly enriched.

115. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

116. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

117. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

118. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marion Greer, on behalf of herself and on behalf of the putative FLSA Collective and Rule 23 Class, requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and telephone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

d. An Order designating Plaintiff Marion Greer as the representative of the FLSA Collective action and the Rule 23 Nationwide Class, and

undersigned counsel as Collective/Class counsel for the same;

e.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    An Order declaring Defendant's violations of the FLSA were willful;

g.    In the event the Defendant seeks to have discovery on the issues of whether the putative FLSA Collective members are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the putative FLSA Collective members as of the filing of this Complaint through the end of the *Clark* discovery period;

h.    An Order declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

i.    An Order declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

j.    An Order granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

k.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

l.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled case.

Dated: May 22, 2026     Respectfully Submitted,

/s/ *Jason* J. *Thompson*
Jason J. Tompson (P47184)
Paulina R. Kennedy (P84790)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300

*Attorneys for Plaintiff and the*
*Putative Collective and Class*